**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

---

**VETO PRO PAC, LLC,**

                    **Plaintiff,**

**vs.**                                    **Civil Action No. 3:08-cv-00302 (VLB)**

**CUSTOM LEATHERCRAFT**
**MANUFACTURING CO., INC. and**
**HOME DEPOT, INC.**

                    **Defendants.**

---

APRIL 15, 2009

**PLAINTIFF VETO PRO PAC'S INITIAL MARKMAN BRIEF IN**
**SUPPORT OF PLAINTIFF'S CLAIM CONSTRUCTION**

The plaintiff, Veto Pro Pac, LLC ( "VETO"), respectfully submits this

Memorandum of Law in support of Plaintiff's Claim Construction urging the Court to

adopt VETO's claim constructions as set forth on the Claim Construction Statement,

appended hereto as Exhibit 1 ("Claim Chart"), regarding United States Patent No.

6,126,003 ("the '003 Patent"). VETO submits this memorandum in support VETO's

proposed constructions.

## FACTS

Plaintiff provided its initial claim construction charts on February 12, 2009 and on

February 13, 2009, the parties conducted a meet and confer regarding claim

construction.  Defendants provided claim construction charts on February 27, 2009 and

on April 7, 2009 the parties conducted a meet and confer to further reduce the number

of terms for construction as provided for in the Scheduling Order dated January 28, 2009. The parties have conferred in an effort to narrow the issues in dispute and have been able to narrow the issues substantially. However, the parties continue to disagree over several definitions. *See* Exhibit 1 Plaintiff's Claim Chart and Exhibit 2 Defendants' Claim Chart appended hereto. Accordingly, VETO has simultaneously filed brief and supporting memorandum for claim construction urging the Court to adopt its proposed claim constructions.

## **ARGUMENT**

## I.    **LEGAL STANDARD**

For the Court, claim interpretation is the first step of a patent infringement analysis.  "An infringement analysis requires two steps: (1) claim construction to determine the scope and meaning of the asserted claims, and (2) a comparison of the properly construed claims with the allegedly infringing device or method to determine whether the device or method embodies every limitation of the claims." *IMS Tech., Inc. v. Haas Automation, Inc.,* 206 F.3d 1422, 1429 (Fed. Cir. 2000), cert. dism'd. *530* U.S. 1299 (U.S. Sep. 11, 2000) (No. 00-234).  Claim construction, the first step, "is a matter of law" for the Court. *Id.*

### a.    **"Ordinary and accustomed meaning" is presumed as starting point**

The analysis begins, "as with all claim interpretation analyses, with the language of the claims." *Johnson Worldwide Assocs., Inc. v. Zebco Corp.,* 175 F.3d *985,* 989 (Fed.Cir. 1999); *see Interactive Gift Express Inc. v. Compuserve Inc., 256* F.3d 1323, 1331 (Fed.Cir. 2001) (and cases cited).  "The claim language, of course, defines the bounds of the claim scope." *York Prods., Inc. v. Cent Tractor Farm & Family Ctr.,* 99

F.3d *1568,* 1572 (Fed. Cir. 1996); *see Bell Commc'n Research, Inc. v. Vitalink Commc'n Corp., 55* F.3d *615,* 619 (Fed. Cir. 1995) ("First, and most importantly, the language of the claim defines the scope of the protected invention.").  In that regard, "a court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of the terms." *Johnson Worldwide,* 175 F.3d at 989.

### b.     "Intrinsic" evidence use is limited.

Next, under limited circumstances, a court can consider "intrinsic" evidence, "beginning with the [patent] specification and concluding with the prosecution history" of the patent.  *Interactive Gift* 231 F.3d at 865.  "These additional sources may provide context and clarification about the meaning of claim terms." *York,* 99 F.3d at 1572. However, "[i]f the claim language is clear on its face, then [a court's] consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified," which occurs only if the inventor has explicitly chosen to use terms contrary to their ordinary meaning or has relinquished a potential claim construction while prosecuting a patent.  *Interactive Gift,* 231 F.3d at 865.

Although the patent specification is the most valuable source of information for determining the meaning of claim terms; *ADD Phillips v AWH Corp.,*  415 F.3d 1303 (Fed Cir. 2005); it "does not delimit the right to exclude [as written in the claims].  That is the function and purpose of the claims." *Markman v. Westview Instr., Inc.,* 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996).  For that reason, "care must be taken to avoid reading 'limitations appearing in the specification . . . into [the] claims." *Interactive Gift,* 231 F.3d at 865.  Similarly, "the prosecution history . . . cannot 'enlarge, diminish,

or vary' the limitations in the claims." *Markman,* 52 F.3d at 980.

      **c.**      **"Extrinsic" evidence is irrelevant if the ordinary meaning and "intrinsic" evidence define the claim terms**

In contrast to such "intrinsic" evidence, "extrinsic evidence" is evidence "external to the patent and file history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles." *Vitronics Corp. v. Conceptronics, Inc.,* 90 F.3d 1576, 1584 (Fed. Cir. 1996). A court may consider such evidence "for background and education on the technology" and "to understand the technology" so that "the court [can discern] the proper understanding of the claims." *Key Pharms. v, Hercon Labs. Corp.,* 161 F.3d 709, 716 (Fed. Cir. 1999); *Vitronics,* 90 F.3d at 1583. If, however, "the meaning of the claim limitations is apparent from the totality of the intrinsic evidence, then the claims has been construed," and "it is improper to rely on extrinsic evidence." *Interactive Gift,* 231 F.3d at 866; *Vitronics,* 90 F.3d at 1583. Extrinsic evidence "may not be used to vary or contradict the claim language." *Id.* Put another way, "if the meaning of a disputed claim term is clear from the intrinsic evidence . . . that meaning, and no other, must prevail..." *Key Pharms.,* 161 F. 3d at 716.

## II.   <u>CLAIM CONSTRUCTION</u>

This brief only addresses the construction of the terms of independent Claim 1 and a single additional term in independent Claim 23, To the extent that the terms contained in Claim 1 are common to other claims, this construction should apply equally to those terms. *See ADD Phillips v. AWH Corp, 415* F.3d 1314 (noting that usage of term in one claim often illuminates meaning of same term in other claims).

Claim 1 is set forth below in its entirety, disputed language is *bolded and*

*italicized* and a discussion of the disputed language follows, with each clause of the claim addressed in turn.  With regard to the construction of any terms not specifically addressed herein, VETO rests on its Claim Construction Statement currently shown as Exhibit 1.

**Claim 1:**

> A tool bag for holding, manually transporting and providing easy accessibility to a plurality of workmen tools by a user, the tool bag comprising:
>
> **a bottom member**, **said bottom member defining a flat surface upon which the tool bag can be rested**;
>
> **a central, generally rigid panel-like member** extending substantially **normal** to said bottom member and **having a handle** to be gripped by the user**;**
>
> and a fabric body portion attached to **said central, generally rigid panel-like member** and thereby forming at least one **enclosure** for the workmen tools.

Under the proper form of claim construction set forth in the cases above, VETO's definitions are appropriate.

A.    **A tool bag for holding, manually transporting and providing easy accessibility to a plurality of workmen tools by a user, the tool bag comprising:_____.**

The parties now agree on the following preamble construction with no changes to original language:

| Claim Language | Proposed Construction |
|---|---|
| A tool bag for holding, manually transporting and providing easy accessibility to a plurality of workmen | A tool bag for holding, manually transporting and providing easy accessibility to a plurality of workmen |

| tools by a user, the tool bag comprising: | tools by a user, the tool bag comprising: |

This language requires "little more than the application of the widely accepted meaning of commonly understood words." *Phillips,* 415 F.3d at 1314; *see also Apple Computer, Inc. v. Articulate Systems, Inc.*, 234 F.3d 14, 22 (Fed. Cir. 2000) (noting that preambles do not act as limitations when merely stating purpose or intended use of invention).

**B.    a bottom member, said bottom member defining a flat surface upon which the tool bag can be rested;**

Veto's proposed constructions of this disputed portion are as follows:

| Claim Language | VETO's Proposed Construction |
|---|---|
| **a bottom member**, | **an outer bottom surface of the tool bag.** |
| **flat** | *Ordinary and common meaning; no further construction necessary* |
| **said bottom member defining a flat surface upon which the tool bag can be rested**; | **an outer bottom surface of the tool bag defining a flat surface upon which the tool bag can be rested.** |

Plaintiff essentially believes the language is clear on its face and accordingly has provided essentially only the addition of "outer bottom surface of the tool bag" to provide a spatial orientation to the term "bottom member." This is felt to be essentially ordinary and common meaning of this element.

With regard to interpretation of the term "flat", Plaintiff urges the Court to consider

this whole phrase B above of the claim in a unified fashion through application of ordinary meaning by determining that any surface "upon which the tool bag can be rested" should be considered a "flat" surface and such a surface in turn defines "bottom member." No other information is needed for a clear understanding of this claim language.    Thus, the court is urged to consolidate this whole phrase as being unitary and one which is internally consistent and self defining without need for any "intrinsic" or "extrinsic" evidence to limit or define it.  It is a simple phrase, easily understood and interpreted without other evidence being necessary or desirable.  Simply put, a surface "upon which the tool bag can be rested" will be considered a "flat surface" for the purposes of this invention. Such an interpretation is fully consistent with all teachings in the specification.

Defendants, by contrast, propose to improperly narrow the term: "a bottom member" by urging importation of a large amount of detail taken from descriptions of embodiments in the specification.  They urge completely redefining that straightforward simple term to include at least four distinct and newly introduced limitations:  "one, and only one, rigid, tray-shaped member providing structural support for the tool bag."

The cases clearly contradict such importation of detail from the specification, even if, *arguendo*, the only embodiment described in the patent included a "tray shaped" bottom member; the claims themselves need not be so limited. The Federal Circuit "has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment," *Liebel-Flarsheim Co. v. Medrad, Inc., 358* F.3d 898 (Fed. Cir. 2004).  VETO's proposed construction is in keeping with the Federal Circuit's case law, Defendants' construction

is not. The specification at Col 2. ll. 24-25 states: "Desirably, the bottom member is a plastic tray…"  which is clear indication that it is not a requirement of  the invention.  The word "[d]esireably" is an unambiguous indication that what follows is exemplary and not a required part of the invention. The defendants argue against this position without any logical basis.

Moreover, to read a "tray" limitation of any type into Claim 1 would render Claim 2 and indirectly Claim 24 superfluous since dependent Claims 2 and 24 both further define "the bottom member" as comprising a "tray". This violates doctrine of claim differentiation. *See Curtiss-Wright Flow Control Corp. v. Vela, Inc.,* 438 F.3d 1374, 1380 (Fed. Cir. 2006) (discussing doctrine of claim differentiation).  Claim differentiation is an important concept to be overlaid on claim construction analysisas set forth by the Federal Circuit:

> In the most specific sense, "claim differentiation" refers to the presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim. . . Indeed the statute stresses that a dependent claim must add a limitation to those recited in the independent claim. *See 35* U.S.C. § 112, ¶ 4 (2000) ("[Al claim in dependent form shall contain a reference to a claim previously set forth and then specify *a further limitation of the subject matter claimed")* (emphasis added). Thus, reading an additional limitation from a dependent claim into an independent claim would not only make that additional limitation superfluous, it might render the dependent claim invalid. The defendants' proposed claim interpretation violates accepted principles of claim construction.
>
> *Id.* At 438 F.3rd at 1380 (citation omitted).

The defendants unnecessarily consult an extrinsic source in support of their "ordinary meaning" of "flat." Specifically, defendants cite Merriam Webster's Collegiate Dictionary (10th ed. 1998) to derive "having a continuous horizontal surface."   There are

many other definitions of "flat" including "having a relatively smooth or even surface"
taken from the same dictionary source.  Plaintiff urges the court to use the functional
language of the claim itself "upon which the tool bag can be rested" to easily and
accurately define "flat."  If it a surface upon which the tool bag can be rested then it is
"flat." This approach is consistent with the cases which urge that "a court must presume
that the terms in the claim mean what they say, and, unless otherwise compelled, give
full effect to the ordinary and accustomed meaning of the terms."  *Johnson Worldwide,*
175 F.3d at 989.

The Federal Circuit in *Phillips v. AWH Corp.,* 415 F .3d 1303, 2005 WL 1620331,
at *13 (Fed.Cir. July 12, 2005) instructed district courts to restrain from first turning to
dictionaries and treatises to define the customary and ordinary meaning of claim terms.
The court reasoned that a dictionary-dependant method of determining the ordinary and
customary meaning of claim terms places 'too much reliance on extrinsic sources such
as dictionaries . . . and too little on intrinsic sources, in particular the specification and
prosecution history.' *Id.* The Federal Circuit held that courts must focus 'at the outset on
how the patentee used the claim term in the claims, specification, and prosecution
history, rather than starting with a broad [dictionary] definition [of claim terms] and
whittling [the dictionary definition] down. *Id.* at *14.

In patent law, reliance on extrinsic evidence, such as a dictionary, is only proper
when the meaning of a claim term cannot be determined from the patent itself. As set
forth above, such is not the case here. To summarize, the Court should not consider or
adopt the defendants' proposed convoluted and lengthy constructions of the "bottom
member" and "flat" terms because the plain language of claim 1 does not support such

an expanded and supplemented construction.  To adopt the defendants' proposal would be contrary to the well-settled proscription against importing limitations from the specification into the claims. Moreover, such a construction would violate the presumption of claim differentiation, namely "bottom member" in Claim 1 cannot <u>necessarily</u> be a "tray" because dependent Claim 2 specifically further differentiates "bottom member" as a "tray". These interpretations cannot co-exist under proper claim differentiation principles.

Defendants' suggest a justification for adding "tray" to the "bottom member" through "intrinsic" detail in the embodiments of the specification based not on the prosecution history of ***this*** '003 patent but rather another one of Plaintiff's patents.  This attempted use of portions of the prosecution history of an unrelated patent is without proper basis in case law.  Even if it were appropriate to apply such a remote prosecution history, Defendants' have chosen a single general descriptive sentence and cherry picked this isolated reference to "tray shaped" from among multiple other characterizations throughout the long prosecution history which accurately used "bottom member" on every other occasion when mention was made of the '003 patent by attorneys prosecuting Plaintiff's '902 patent.  It is simply not in keeping with the cases to use such an isolated statement in an unrelated patent prosecution history to import "intrinsic" evidence to limit a claim term in a completely unrelated patent.  The Federal Circuit in *Interactive Gift,* 231 F.3d at 865 states: "care must be taken to avoid reading 'limitations appearing in the specification . . . into [the] claims."  Defendants' attempts go considerably farther than the proscription urged by the Federal Circuit by trying to shoehorn extraneous information culled from an unrelated prosecution history in

addition to specific embodiment descriptions in the specification. Such use of "intrinsic" and 'extrinsic" evidence is contrary to proper claim interpretation.  It is at the same time disingenuous, clearly unnecessary and renders a simple easy-to-read claim to one that is convoluted and difficult to understand. This Court should not consider proper defendants' importation of limitations from the unrelated patent prosecution history and from the specification into the claim terms.

**C.**    "a ***central, generally rigid panel-like member*** extending substantially ***normal*** to said bottom member"                                                        .

| Claim Language | VETO's Proposed Construction |
|---|---|
| a **central,** | *Ordinary and common meaning; no further construction needed.* |
| **generally rigid** | **more rigid than not allowing  some degree of flexibility** |
| **panel-like member** | *Ordinary and common meaning; no further construction needed.* |
| extending substantially **normal** to said bottom member | **perpendicular** *Essentially, ordinary and common meaning; no further construction needed* |

Plaintiff urges ordinary and common meaning for most of the phrase "C" with "central" and "panel-like member" being so construed and urging *essentially* ordinary meaning for the other terms "generally rigid" and "normal" although varying the language slightly in order to construe the claim more easily.  Intrinsic support is not necessary for these variations as they are truly common meaning without reverting to dictionary definitions which may be understood in some case decisions as using "extrinsic" evidence.  Plaintiff is certainly not urging that any such extrinsic is intended by its choice of language and urges the court to adopt these essentially ordinary and

common meanings.

Dissatisfied with the simplicity of this "C" term, however, the defendants again seek to narrow the portion "a central, generally rigid panel-like member" by requiring the use of two "extrinsic" dictionary definitions and then go even further to reach into a very specific embodiment to import a completely unnecessary and improperly limiting phrase "a sturdy structural frame" into the claim term.   In so doing, however, the defendants improperly urge the Court to read the limitations of the dictionary terms and of "a sturdy structural frame" into Claim 1. It is fundamental to patent law that limitations cannot be read into a claim without a basis for do so. However, "[i]f the claim language is clear on its face, then [a court's] consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified," which occurs only if the inventor has explicitly chosen to use terms contrary to their ordinary meaning or has relinquished a potential claim construction while prosecuting a patent. *Interactive Gift,* 231 F.3d at 865.  The court further warns that "care must be taken to avoid reading 'limitations appearing in the specification . . . into [the] claims." *Id.*

   D.  "**having a handle** to be gripped by he user, and

| Claim Language | VETO's Proposed Construction |
|---|---|
| and **having a handle to be gripped by the user; and** | *Ordinary and common meaning; no further construction needed.* |

Plaintiff again urges the Court to adopt ordinary and common meaning to this

simple and understandable term.

Defendants, by contrast, yet again propose to improperly narrow the term: "having a handle" by urging importation of unjustifiable limitations and detail taken from descriptions of embodiments in the specification. They urge "a handle formed by an opening in the central panel" as a justified construction. The cases clearly contradict such importation of detail from the specification, <u>even if</u> the only embodiment described in the patent included a "handle formed by an opening in the central panel", the claims themselves need not be so limited. The Federal Circuit as noted previously "has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment," *Liebel-Flarsheim Co. v. Medrad, Inc., 358* F.3d 898 (Fed. Cir. 2004). VETO's proposed construction is in keeping with the Federal Circuit's case law, Defendants' construction is not.

Even more importantly, to read the defendants' proposed limitation into Claim 1 would render dependent Claim 8 superfluous since that claim further defines the handle as follows "said central, generally rigid panel has an opening defined therein...to form said handle." This construction by defendants violates doctrine of claim differentiation by making Claim 8 superfluous. *See Curtiss-Wright Flow Control Corp. v. Vela, Inc.,* 438 F.3d 1374, 1380 (Fed. Cir. 2006) (discussing doctrine of claim differentiation), which has been fully discussed above. Similarly, defendant's effectively similar construction of this term in Independent Claim 23 would violate claim differentiation due to the presence of dependent Claim 29 which has equivalent repetitive language to that of claim 8.

Defendants' suggestion that prosecution history supports the inclusion of this importation of the limiting language into Claim 1 is unsupportable, as noted above as the prosecution history being sited is not for the '003 patent but an unrelated one '902. Further, the comment in that unrelated file history accurately is referring to the scope of dependent Claims 8 and 29 rather than the overall scope of the art being described. This is a baseless justification for including limitations derived from such "intrinsic" evidence. The Court is urged to reject defendants' flawed positions supporting their proposed limitations.

E.     a fabric body portion attached to said central, generally rigid panel-like member and thereby forming at least one **_enclosure_** for the workmen tools            .

| Claim Language | VETO's Proposed Construction |
|---|---|
| a fabric body portion attached to said central, generally rigid panel-like member and thereby forming at least one **enclosure** for the workmen tools. | **" enclosure" means "area  for containing workmen tools"**<br><br>*All other terms are ordinary and common meaning; no further construction needed.* |

Defendants were understood in the April 6 meet and confer to have agreed to withdraw its earlier proposed construction of "a fabric body portion" and "attached" in favor of common and ordinary meaning and Plaintiff agrees to such construction.  For that reason this particular section of defendants' claim chart in Exhibit 2 has been shaded to convey that understanding as to those terms.

The Plaintiff's proposed construction of **"enclosure"** is **"area for containing workmen tools"** which indirectly draws on a dictionary definition that "enclosure" is " a

structure consisting of an area that has been enclosed for some purpose".

Dictionary.com *WordNet® 3.0* Princeton University,

http://dictionary.reference.com/browse/enclosure  (accessed: March 24, 2009).

Plaintiff's construction simply substitutes the appropriate detail of "containing workmen

tools" to portion of the dictionary's definition: "has been enclosed for some purpose."

Support for such a purpose of the area is replete throughout the specification.  Plaintiff's

definition is simple and entirely appropriate to the specification.

Defendants' proposed construction again strives to import the limitation

"completely enclosed space" by proposing that recourse is needed to the implicit

teachings of the specification by the citation of numerous embodiment descriptions.

The specification passage at Col 2, ll. 52-56, which is used by defendants to support

this limitation, notably starts with the operative word:  "Conveniently..." and by use of

that phrase it is evident that this example is meant generally to illustrate that this is

exemplary, not a requirement of the invention.  It is analogous to the use in drafting a

patent application of phrases like, "such items as" which indicates that what follows is

exemplary and not a required or exhaustive characteristic. Similarly all of defendants'

other cited passages describe only illustrative description, not requirements of the

invention.

Defendants cite the discussion in the specification of "Bucket Boss" to support its

narrow construction of "enclosure" but the implication of that text by defendants is

simply improper.  General criticism of the prior art does not serve to limit a patent's

claims. *See Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.,* 473 F.3d 1173, 1180-81

(Fed. Cir. 2006); O.J. Corp *v. Tekmar Co. Inc.,* 115 F.3d 1576, 1581 (Fed. Cir. 1997).

Thus the mere mention of a defect of the prior art does not import into applicant's invention the exact features of his invention that deal with the defect in the prior art. What defines the invention is simply and solely, the claims. The specification "does not delimit the right to exclude [as written in the claims]. That is the function and purpose of the claims." *Markman v. Westview Instr., Inc.,* 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996).

### 2. Independent Claim 23

| Claim Language | VETO's Proposed Construction |
|---|---|
| a central generally rigid *frame member* centrally located on and attached to said bottom member so as to extend substantially normal to said bottom member and having a handle to be gripped by the user; and | "frame member" means "a structure that gives shape or support" |

Plaintiff and defendants have agreed that all claim terms construed in Claim 1 will have the same construction apply in other claims including Independent Claim 23 which has most terms in common with Claim 1 with the exception that Claim 23 has the term "frame member." Plaintiff urges the Court to adopt its construction which is " a structure that gives shape or support." This construction is essentially ordinary meaning as it is derived from the meaning of "frame" which is given as "structure that gives shape or support: the frame of a house." Dictionary.com. The American Heritage® Dictionary of the English Language, Fourth Edition. Houghton Mifflin Company, 2004.

16

http://dictionary.reference.com/browse/frame (accessed: March 24, 2009). This simple construction of the term is urged by plaintiff as it is consistent with claim interpretation rules.

Defendants urge that the "frame member" term be construed to be equivalent to the "panel-like member" term from Claim 1 and incorporated into the broader phrase "a central generally rigid panel-like member" to yield an exactly equivalent claim coverage. Defendants' simplistic view of the claim language as being equivalent would again violate the claim differentiation concept. The defendant is essentially saying that Claim 1 means the same as Claim 23. However, this approach would violate the doctrine of claim differentiation *See Curtiss-Wright Flow Control Corp. v. Vela, Inc.,* 438 F.3d 1374, 1380 (Fed. Cir. 2006). While the court was interpreting reading claim limitations from dependent claims into independent claims as the defendant has done numerous times in their proposed construction, the same principle applies with equal force to the defendants' position that two *independent* claims cover the same subject matter; this violates claim differentiation. *Id.* At 438 F.3[rd] at 1380.

**Claim 28**

| Claim Language | VETO's Proposed Construction |
|---|---|
| said central generally rigid frame member is made of **a plastic material** | *Ordinary and common meaning; no further construction needed.* |

Plaintiff again urges ordinary and common meaning while defendants urge bringing in "exrinsic" evidence without any reason to do so, it is a perfectly well

understood term.  As previously noted, the Federal Circuit in *Phillips v. AWH Corp.,* 415 F .3d 1303, 2005 WL 1620331, at *13 (Fed.Cir. July 12, 2005)  held that courts must focus 'at the outset on how the patentee used the claim term in the claims, specification, and prosecution history, rather than starting with a broad [dictionary] definition [of claim terms] and whittling [the dictionary definition] down.' *Phillips v. AWH Corp.,* 415 F.3d 1303, 2005 WL 1620331, at *14 (Fed.Cir. July 12, 2005).  Here the term plastic material is a common term, easily understood and accordingly should not be subject to an overlay of "extrinsic" evidence.  Defendants' definition inappropriately limits the material to a "solid" material when the specification certainly has no such limitation. The specification would allow for foamed or cellular plastic materials as well as honeycombed type plastic structures which are commonly known and applicable as "generally rigid" members.  The plaintiff should not be put to the choice of being forced to put forward a competing dictionary definition to respond to defendants' dictionary limitation to the term.

## CONCLUSION

For all the reasons set forth herein, the Court should reject the defendants' repeated attempts to torture the patent's plain language and  to read restrictions into the claim language when such language is simple and well understood. VETO generally contends that no further construction of the disputed language is necessary because most term usage constitutes ordinary and common language warranting ordinary and common meaning. In contrast, the defendants seek to impose unnecessarily narrow and technical definitions to the most common words in these claims in contradiction to the general guidance of the Federal Circuit.

For the reasons set forth above, VETO respectfully requests the Court to adopt its interpretation of the disputed parts of the claims.

Dated: April 15, 2009
Middletown, Connecticut

**PLAINTIFF, VETO PRO PAC, LLC**

By: /s/ Raymond D. Thompson
Raymond D. Thompson (ct27026)
Richard R. Michaud (ct17144)
Their Attorneys
Michaud-Duffy Group LLP
306 Industrial Park Road, Suite 206
Middletown, CT 06457
Phone: (860) 632-7200
Fax: (860) 632-8269
Email: michaud@michaud-duffy.com
Email: thompson@michaud-duffy.com

## CERTIFICATE OF SERVICE

I hereby certify that on this April 15, 2009, the foregoing was filed electronically, and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Raymond D. Thompson
Raymond D. Thompson (ct27026)
Michaud-Duffy Group LLP
306 Industrial Park Road, Suite 206
Middletown, CT 06457
Phone: (860) 632-7200
Fax: (860) 632-8269
Email: thompson@michaud-duffy.com

EXHIBIT 1

# U.S. Patent No. 6,126,003 Claim Construction Chart

| U.S. Patent No. 6,126,003 issued October 3, 2000 | Plaintiff's Proposed Construction and Evidence in Support |
|---|---|
| **Claim 1.** A tool bag for holding, manually transporting and providing easy accessibility to a plurality of workmen tools by a user, the tool bag comprising: | |
| **a bottom member**, **said bottom member defining a flat surface upon which the tool bag can be rested**; | "a bottom member" means "an outer bottom surface of the tool bag."<br><br>**"said bottom member defining a flat surface upon which the tool bag can be rested" means " an outer bottom surface defining a flat surface upon which the tool bag can be rested."**<br><br>Plaintiff essentially believes the language is clear on its face and no additional definition would further clarify this element. |
| a **central, generally rigid panel-like member** extending substantially **normal** to said bottom member | **"central"**<br><br>Ordinary and common meaning; no further construction needed.<br><br>**"generally rigid" means "more rigid than not allowing some degree of flexibility"**<br><br>**"panel-like member"** |

EXHIBIT 1

| | Ordinary and common meaning; no further construction needed. |
|---|---|
| | **"normal""" means "perpendicular"**<br>Essentially, ordinary and common meaning; no further construction needed |
| and **having a handle to be gripped by the user; and** | **and having a handle to be gripped by the user; and**<br><br>Ordinary and common meaning; no further construction needed. |
| a **fabric body portion attached** to said **central, generally rigid** panel-like member and **thereby forming at least one enclosure** for the workmen tools. | **"a fabric body portion" means " a fabric body member made at least in part from a flexible material chosen from the group consisting of canvas, vinyl, leather, cloth and combinations thereof, where cloth means any fabric or material formed by weaving, knitting, pressing, or felting natural or synthetic fibers"**<br><br>Ordinary meaning of "cloth" is "fabric or material formed by weaving, knitting, pressing, or felting natural or synthetic fibers." Dictionary.com. *WordNet® 3.0*. Princeton University.<br><br>**"attached"**<br><br>Ordinary and common meaning; no further construction needed<br><br>**"to said central, generally rigid panel-like member"**<br>As construed above.<br><br>Plaintiff essentially believes the language is clear on its face and no additional definition would further clarify this element. |

EXHIBIT 1

| | |
|---|---|
| | **"and thereby forming at least one"**<br><br>Ordinary and common meaning; no further construction needed. |
| | **" enclosure" means "area  for containing workmen tools"** |
| **Claim 23.** A bag for providing easy manual transport thereof by a user, the bag comprising: | |
| a **bottom member**, **said bottom member defining a flat surface upon which the bag can be rested**; | **"a bottom member," "said bottom member defining a flat surface," and "upon which the tool bag can be rested"**<br>**all have the same meaning as those terms have in Claim 1.**<br>. |
| a **central generally rigid frame member** centrally located on and attached to said **bottom member** so as to extend substantially **normal** to said bottom member and **having a handle to be gripped by the user**; and | **"central" and "generally rigid" have the same meaning as those terms have in Claim 1.**<br><br>**"frame member" means "a structure that gives shape or support"**<br>Ordinary meaning is "structure that gives shape or support: *the frame of a house."*Dictionary.com. *The American Heritage® Dictionary of the English Language, Fourth Edition.* Houghton Mifflin Company, 2004.<br>http://dictionary.reference.com/browse/frame (accessed: March 24, 2009)<br><br>**"normal" means "perpendicular"**<br>Essentially ordinary and common meaning; no further construction needed |
| | **"and having a handle to be gripped by the user" has** |

EXHIBIT 1

| | the same meaning this term has in Claim 1. |
|---|---|
| a **fabric body portion attached** to said **bottom member** and said central generally rigid frame member **thereby forming at least one enclosure**. | **"a fabric body portion," "attached," "bottom member," "and thereby forming at least one"** and **"enclosure"** all have the same meaning as those terms have in Claim 1. |
| **Claim 28**. The bag of claim 23, wherein. | |
| said central generally rigid frame member is made of **a plastic material** | **"a plastic material"**<br><br>Ordinary and common meaning; no further construction needed. |

EXHIBIT 2

# U.S. Patent no. 6,126,003 Claim Terms

| | '003 Patent | Claim Construction |
|---|---|---|
| 1. | A tool bag for holding, manually transporting and providing easy accessibility to a plurality of workmen tools by a user, the tool bag comprising: | |
| | **a bottom member**, | **"A bottom member" means "one, and only one, rigid, tray-shaped member providing structural support for the tool bag."**<br><br>Tray-shaped<br>• Each of the three embodiments teaches a tray-shaped bottom member.  See Col. 3, ll. 24-25 ("bottom member is formed in the shape of a tray"); Figs. 1-11.<br>• During prosecution of the '902 patent, to overcome an obviousness rejection based in part on the '003 patent ("Brouard"), the applicant explicitly stated that Brouard teaches a tray-shaped bottom member:  "Brouard is directed to a tool bag having a central panel that defines a handle.  The tool bag includes a bottom member formed in the shape of a tray. . . ."  April 6, 2004 Response to Office Action, at 6.<br>• The patent teaches a single way to attach the body to the bottom member, i.e., stitching it "to the periphery of the bottom member 12."  Col. 4, ll. 32-32. This requires a single tray-shaped bottom member.  See Fig. 8.<br><br>One and only one, rigid, member providing structural support<br>• The specification refers to "the bottom member," demonstrating that "a bottom member" means that there is one and only one bottom member.  See, e.g., Abstract; Col. 2, ll. 25, 29, 40; Col. 3, ll. 24, 32, 51 (emphasis added).  Furthermore, each of the figures display a single bottom member, and nowhere does the patent indicate that the |

| | |
|---|---|
| | claimed bag can have more than one bottom member.<br>• The patent explicitly teaches that the bottom member provides "structural support" for the bag: "The bottom member and central panel member provide a structural support for the fabric body portion." Abstract. <u>See</u> <u>also</u> March 30, 2000 Response to Office Action ("[T]he central panel/frame member 14 is secured to the bottom member 12 to provide a sturdy structural frame for applicant's tool bag. . . ."). <br>• To provide the structural support, the bottom member must be a single, rigid, panel. <u>See</u> Col 3, ll. 28-30 ("Preferably, the bottom member 12 and central panel member 14 are both constructed of a suitable relatively rigid, impact resistant plastic material.") |
| said bottom member defining a **flat surface** upon which the tool bag can be rested; | **"Flat Surface" means "a single continuous horizontal surface."**<br>• Ordinary meaning of "flat" is "having a continuous horizontal surface." Merriam-Webster's Collegiate Dictionary (10th ed. 1998).<br>• The claim language and the specification supports this construction since they specify that the flat surface is "defined" by the bottom member and that the bag can be rested on it. Claim 1; Col. 2, ll. 15-16.<br>• In every drawing where the bottom member is displayed it is a single continuous horizontal surface. <u>See</u> Figs. 1, 2, 4-8, 10, 11. |
| **a central, generally rigid panel-like member** extending substantially normal to said bottom member and | **"A central, generally rigid panel-like member" means "a stiff and inflexible panel-like member situated substantially in the center of the bag so as to bifurcate the interior of the bag into two substantially equal interior compartments."**<br>• Ordinary meaning of "rigid" is "deficient in or devoid of flexibility." Merriam-Webster's Collegiate Dictionary (10th ed. 1998).<br>• During prosecution, the applicant stated that "the central panel/frame member 14 is secured to the bottom member 12 to provide <u>a sturdy structural frame</u> for applicant's tool bag." March 30, 2000 Reply to Office Action, at 5 (emphasis added).<br>• Ordinary meaning of "central" is "situated at, in, or near the center." Merriam-Webster's Collegiate Dictionary (10th ed. 1998).<br>• The specification states that "[t]he fabric body portion on each side of the central panel |

<table>
<tr>
<td></td>
<td>

member <u>is identical</u> so its design and construction will be explained with reference to only one side of the central panel member." Col. 3, ll. 56-59 (emphasis added). The fabric body portion on each side of the central panel member can only be identical if the central panel bifurcates the interior into equal portions.

- The specification states that it is an object of the invention "to provide a tool bag which has a central panel with a handle at its top that allows the tool bag to be easily carried." Col. 2, ll. 1-3. This is achieved if the panel with the handle bifurcates the interior of the bag, thereby centering the load.

- Every embodiment teaches a central panel that bifurcates the interior of the bag into two substantially equal portions.

- During prosecution, the applicant distinguished U.S. Patent No. 5,797,491 by explaining that "[t]he generally rigid centrally located panel/frame member 14 of applicant's invention also has the advantage of having a handle 28 which <u>centers the load of applicant's tool bag</u> making it easier to carry and handle." March 30, 2000 Reply to Office Action, at 5 (emphasis added).

</td>
</tr>
<tr>
<td>

**having a handle** to be gripped by the user; and

</td>
<td>

**"Having a handle" means "a handle formed by an opening in the central panel."**
- "According to <u>the invention</u>, the central panel-like member has an opening defined therein adjacent an upper end thereof to form the handle." Col. 2, ll. 33-35 (emphasis added).

- Every embodiment and drawing displays a handle formed by an opening in the central panel. <u>See</u>, <u>e.g.</u>, Col. 3, ll. 43-43 ("The central panel member 14 has an opening 24 defining a handle though which the hand of the user can be inserted."); Fig. 7.

- During prosecution of the '902 patent, the applicant distinguished the '003 patent ("Brouard") by explaining that "[b]ecause the handle shown in Brouard is part of the rigid, central panel member, the handle cannot pivot relative to the panel member or the bag body." Nov. 23, 2004 Response to Office Action, at 4.

- The applicant also distinguished Brouard by explaining that "the '003 reference does not teach or suggest 'a handle coupled to a bag body defined by said tool bag.' Instead, the '003 reference teaches, and claim, that the central panel member includes a handle

</td>
</tr>
</table>

EXHIBIT 2

| | |
|---|---|
| | formed thereon. As such, the '003 reference teaches away from the present invention and cannot form the basis for a section 103 rejection." Aug. 6, 2004 Response to Final Office Action, at 4. |
| **a fabric body portion** | **"A fabric body portion" means "a portion made of any suitable natural or synthetic flexible material such as canvas, vinyl, leather, cloth or combinations thereof, that is in a shape required to meet the requirements of the claimed invention."**<br>• The specification states that the term "fabric" as used in conjunction with the fabric body portion "can be any suitable natural or synthetic flexible material such as canvas, vinyl, leather, cloth or combinations thereof." Col. 3, ll. 53-56. See also claim 22.<br>• The shape of the fabric portion must conform to the requirements of the claimed invention. For example, it must be shaped so as to form "at least one enclosure for the workmen tools. |
| **attached** to said central, generally rigid panel-like member and | **"Attached" means "permanently fastened by means such as gluing, stitching or riveting."** |
| thereby forming at least one **enclosure** for the workmen tools. | **"Enclosure" means "completely enclosed space."**<br>The specification and prosecution history clearly demonstrates that the enclosure is a completely enclosed space that may be opened to gain access to the tools stored in the tool bag:<br>• The "at least one enclosure" is formed by the attachment of the fabric body member to the bottom member and the central panel-like member. Col. 2, ll. 19-22.<br>• "Conveniently, the fabric body member includes two cover panels on each side of the central-panel like member so as to provide access to the at least one enclosure for the workmen tools. The cover panels each having a zipper closure member attached thereto." Col. 2, ll. 52-56 (emphasis added). |

| | | |
|---|---|---|
| | | • "In use, the user of the tool bag 10 of <u>the present invention</u> can open the two fabric <u>cover panels</u> 64 by unzipping the <u>zipper closure members</u> 72 thereby <u>providing access to the interior of the tool bag</u> as seen in FIG. 6"  Col. 4, ll. 59-63 (emphasis added). <br><br>• "The fabric body portion also has a pair of fabric cover panels which enclose the tools within the tool bag.  <u>The tools within the tool bag are secured from view</u>, compactly stored in an organized manner and easily carried."  Abstract (emphasis added). <br><br>• Every drawing displaying the fabric body shows the fabric cover panels 64 - components of the fabric body member 16 – completely surrounding and enclosing the interior of the tool bag or having the possibility of doing so.  <u>See</u> Figs. 1-3, 5, 6, 8, 10, 11. <br><br>• The specification explains that a drawback with the background art "Bucket Boss" is that "[t]he tools are exposed [and] . . . . [i]f the bucket tips over, everything stored therein can spill out."  Col. 1, ll. 58-61.  It is stated that "an object of the present invention is to overcome the drawbacks" of the background art, Col. 1, ll. 65-66, and the specification explains that the enclosure solves this particular drawback:  "Once the tool bag 10 is loaded, the fabric cover panels 64 can be returned to their closed position using the zipper closure members 77 (see FIG. 1).  In this closed position, the tools are <u>fully enclosed</u> in the tool bag 10 <u>so the tools will not come out of the tool bag</u> 10 during carrying and transport or in the event the tool bag 10 is <u>accidentally knocked over</u> once it is laid to rest."  Col. 5, ll. 3-8 (emphasis added). <br><br>• The prosecution history confirms this construction.  Distinguishing U.S. Patent No. 5,797,491 ("Fierek"), the applicant stated that "Fierek et al.'s development to include a completely fabric bag with a <u>cinch-up closing feature</u> is completely the opposite principle from the present invention where the central panel/frame member 14 is secured to the bottom structural frame member 12 to provide a sturdy structural frame for applicant's tool bag 10 . . . and <u>closure of applicant's tool bag 10 is accomplished by cover panels</u> <u>64</u>."  March 30, 2000 Response to Office Action, at 5 (emphasis added). |
| 17. | The tool bag of claim 1, wherein said fabric body member is | **"Attached" means "permanently fastened by means such as gluing, stitching or riveting."** |

| | | |
|---|---|---|
| | **attached** to said bottom member along a periphery thereof. | |
| **22.** | The bag of claim 1, wherein said fabric body member is made at least in part from a **flexible material** chosen from the group consisting of canvas, vinyl, leather, cloth and combinations thereof. | **"Flexible material" means "one or a combination of canvas, vinyl, leather or cloth."**<br>• "The phrase 'consisting of' is a term of art in patent law signifying restriction and exclusion. . . . In simple terms, a drafter uses the phrase 'consisting of' to mean 'I claim what follows and nothing else.'" <u>Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.</u>, 212 F.3d 1377, 1382-83 (Fed. Cir. 2000). |
| **23.** | A bag for providing easy manual transport thereof by a user, the bag comprising: | |
| | **a bottom member**, said bottom member defining a **flat surface** upon which the bag can be rested; | **"A bottom member" and "flat surface" have the same meaning as those terms have in Claim 1.** |
| | **a central generally rigid frame member** centrally located on and attached to said bottom member so as to extend substantially normal to said bottom member and<br><br>**having a handle** to be gripped by the user; and | **"A central generally rigid frame member" has the same meaning as "a central, generally rigid panel-like member" in Claim 1.**<br>• In order for the "frame member" to form the "at least one enclosure" with the "fabric body portion" and the "bottom member" as required by this Claim, the "frame member" must necessarily be "panel-like."<br>• Every embodiment and drawing displays only a "frame member" that is "panel-like."<br><br>**"Having a handle" has the same meaning as the term has in Claim 1.** |
| | **a fabric body portion attached** to said bottom member and said | **"A fabric body portion," attached" and "enclosure" have the same meaning as those terms have in Claim 1.** |

EXHIBIT 2

| | | |
|---|---|---|
| | central generally rigid frame member thereby forming at least one **enclosure**. | |
| 28. | The bag of claim 23, wherein said central generally rigid frame member is made of **a plastic material**. | **"A plastic material" means a synthetic or semisynthetic organic solid material that is generally rigid."**<br>• See, e.g., http://en.wikipedia.org/wiki/Plastic |
| 43. | The bag of claim 23, wherein said fabric body member is made at least in part from a **flexible material** chosen from the group consisting of canvas, vinyl, leather, cloth and combinations thereof. | **"Flexible material" has the same meaning as that that term has in Claim 22.** |
| 46. | The tool bag of claim 1, wherein said **fabric body portion** is **attached** to said **central, generally rigid panel-like member** across an upper end thereof adjacent said **handle** and extends downwardly therefrom to join said **bottom member**. | **"Fabric body portion," "attached," "central, generally rigid panel-like member," "handle" and "bottom member" have the same meaning as those terms have in Claim 1.** |
| 49. | The tool bag of claim 23, wherein said **fabric body portion** is **attached** to said **central generally rigid frame member** across an upper end thereof adjacent said **handle** and | **"Fabric body portion," "attached," "central generally rigid frame member," "handle" and "bottom member" have the same meaning as those terms have in Claim 23.** |

EXHIBIT 2

| | |
|---|---|
| extends downwardly therefrom to join said **bottom member**. | |