## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT
### (Hartford)

| | |
|---|---|
| **VETO PRO PAC, LLC,** | |
| **Plaintiff,** | |
| **vs.** | **Civil Action No. 3:08-cv-00302 (VLB)** |
| **CUSTOM LEATHERCRAFT MANUFACTURING CO., INC. and HOME DEPOT U.S.A., INC.** | |
| **Defendants.** | |

## DEFENDANT CUSTOM LEATHERCRAFT MANUFACTURING
## <u>CO., INC.'S RESPONSIVE CLAIM CONSTRUCTION MEMORANDUM</u>

## TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................ 1

**I.    TECHNOLOGICAL BACKGROUND OF THE 'OO3 PATENT** ...................... 2

**PRINCIPLES OF CLAIM CONSTRUCTION** ........................................................... 3

**I.    CLAIM CONSTUCTION LAW AFTER PHILLIPS** ........................................... 3

**II.   VETO'S INCORRECT RECITATION OF CLAIM CONSTRUCTION LAW** .. 4

**CONSTRUCTION OF DISPUTED CLAIM TERMS** ................................................ 8

**I.    ENCLOSURE** ................................................................................................ 8

**II.   FLAT SURFACE** ........................................................................................... 13

**III.  A BOTTOM MEMBER** ................................................................................... 14

      **A.    Tray-Shaped** ......................................................................................... 14

      **B.    Providing Structural Support** .............................................................. 18

**IV.   A CENTRAL, GENERALLY RIGID PANEL-LIKE MEMBER** ....................... 20

      **A.    Central** .................................................................................................. 20

      **B.    Generally Rigid** .................................................................................... 23

**V.    HAVING A HANDLE** ..................................................................................... 24

**VI.   FRAME MEMBER** ......................................................................................... 28

**CONCLUSION** .................................................................................................. 33

## TABLE OF AUTHORITIES

**Andersen Corp. v. Fiber Composites, LLC,**
    474 F.3d 1361 (Fed. Cir. 2007)..............................................17, 30

**Cultor Corp. v. A.E. Staley Mfg. Co.,**
    224 F.3d 1328 (Fed. Cir. 2000) .................................................. 16

**Curtiss-Wright Flow Control Corp. v. Velan, Inc.,**
    438 F.3d 1374 (Fed. Cir. 2006)...............................................27, 30

**Gaus v. Conair Corp.,**
    363 F.3d 1284 (Fed. Cir. 2004 ................................................... 24

**Hormone Research Found. v. Genentech, Inc.,**
    904 F.2d 1558 (Fed. Cir. 1990) .................................................. 30

**ICU Med., Inc. v. Alaris Med. Sys.,**
    558 F.3d 1368 (Fed. Cir. 2009)............................................*passim*

**Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.,**
    450 F.3d 1350 (Fed. Cir. 2006) .................................................. 26

**Interactive Gift Express, Inc. v. Compuserve Inc.,**
    256 F.3d 1323 (Fed. Cir. 2001) ...........................................5, 6, 22

**Kyocera Wireless Corp. v. ITC,**
    545 F.3d 1340 (Fed. Cir. 2008) ................................................... 9

**Liebel-Flarsheim Co. v. Medrad, Inc.,**
    358 F.3d 898 (Fed. Cir. 2004) .................................................... 16

**Markman v. Westview Instruments, Inc.,**
    52 F.3d 967 (Fed. Cir. 1995) ....................................................... 4

**Microsoft Corp. v. Multi-Tech Sys.,**
    357 F.3d 1340 (Fed. Cir. 2004).................................................4, 26

**Multiform Desiccants, Inc. v. Medzam Ltd.,**
    133 F.3d 1473 (Fed. Cir. 1998)...............................................17, 31

**Netcraft Corp. v. Ebay, Inc.,**
    549 F.3d 1394 (Fed. Cir. 2008) .................................................. 27

**O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,**
    521 F.3d 1351 (Fed. Cir. 2008) ................................................... 7

**O.I. Corp. v. Tekmar Co.,**
   **115 F.3d 1576 (Fed. Cir. 1997)** ................................................................. 9

**On Demand Mach. Corp. v. Ingram Indus.,**
   **442 F.3d 1331 (Fed. Cir. 2006)** ............................................................. 15

**Ormco Corp. v. Align Tech., Inc.,**
   **498 F.3d 1307 (Fed. Cir. 2007)** .............................................................. 9

**Phillips v. AWH Corp.,**
   **415 F.3d 1303 (Fed. Cir. 2005)** .............................................................*passim*

**Realsource, Inc. v. Best Buy Co.,**
   **282 Fed. Appx. 821 (Fed. Cir. 2008)** ........................................... 27

**Springs Window Fashions LP v. Novo Indus., L.P.,**
   **323 F.3d 989 (Fed. Cir. 2003)** ............................................. 15, 19, 26

**Ventana Med. Sys. v. Biogenex Labs., Inc.**
   .......... **473 F.3d 1178 (Fed. Cir. 2006)** ..................................................9

**Tex. Digital Sys. v. Telegenix, Inc.,**
   **308 F.3d 1193 (Fed. Cir. 2002)** ............................................................. 5

**V-Formation, Inc. v. Benetton Group SpA,**
   **401 F.3d 1307 (Fed. Cir. 2005)** ............................................................. 4

**Vitronics Corp. v. Conceptronic,**
   **90 F.3d 1576 (Fed. Cir. 1996)** ..............................................4, 5, 6

iii

Defendant Custom LeatherCraft Manufacturing Co., Inc. ("CLC") respectfully submits this claim construction memorandum in support of its proposed construction of certain claim terms of United States Patent No. 6,126,003 ("the '003 patent").

<u>INTRODUCTION</u>

The purpose of claim construction is to determine the meaning and scope of the disputed terms in the patent claims asserted to be infringed. This enables the fact finder to then determine whether an accused product is within the scope of the claim.  In its Initial Markman Brief, plaintiff Veto Pro Pac, LLC ("Veto") fails to perform proper claim construction.  Simply stating that a disputed claim term should have its "ordinary and common meaning" as Veto does throughout its brief, without telling the Court what that meaning is, does nothing to determine the meaning and scope of the disputed term.  At best, Veto's approach is innocent error; at worst it is an attempt to improperly increase the reach of its patent far beyond the scope of the disclosed invention.

Furthermore, Veto's contention that a court can only consider intrinsic evidence "under limited circumstances" is incorrect and directly contrary to the Federal Circuit's binding case law.  Since <u>Phillips v. AWH Corp</u>., 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*), it has been black letter law that courts cannot determine the ordinary meaning of a claim term in a vacuum but must do so in the context of the written description and the prosecution history, i.e., the intrinsic record.  Veto fails to provide any

1

support from the intrinsic record for its constructions – to the extent it has offered any – and should be rejected by the Court.  By contrast, CLC's proposed constructions were reached using the correct legal principles, comport with the ordinary and customary meaning of the terms, and are fully supported by the intrinsic record as required by the Federal Circuit. The Court should therefore adopt CLC's proposed constructions.

## I.     TECHNOLOGICAL BACKGROUND OF THE '003 PATENT

Throughout recorded history, people have used tools to accomplish tasks.  With the use of tools came the need to store and transport the tools from one location to another.  Tool carriers in various forms have been in use for centuries in the United States.  In general, they are not technologically complex items.  The '003 patent, entitled "Tool Bag," is directed to "a fabric bag in which workmen tools are easily organized, carried and accessed."  (Ex. 2, '003 patent, Col. 1, ll. 8-9.)



FIG. 1

(Id., Fig. 1.)  More specifically, the patent claims a bag comprising a bottom member, a central panel-like member and a fabric body portion where these elements have certain specified characteristics and are organized in a

2

specified manner.  The patent is, then, directed toward a technology that is both mature and familiar.

**PRINCIPLES OF CLAIM CONSTRUCTION**

I.      **CLAIM CONSTUCTION LAW AFTER PHILLIPS**

The Federal Circuit has consistently explained that claim terms should generally be given their ordinary and customary meaning as understood by "a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  ICU Med., Inc. v. Alaris Med. Sys., 558 F.3d 1368, 1374 (Fed. Cir. 2009) (quoting Phillips, 415 F.3d at 1312-13).

While "[i]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges," Phillips, 415 F.3d at 1314, "the specification is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."  Id. at 1315 (internal quotation marks omitted).  This is because "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  ICU Med, 558 F.3d at 1374 (quoting Phillips, 415 F.3d at 1313).

In addition to consulting the specification, a court "should also consider the patent's prosecution history, if it is in evidence."  Phillips, 415 F.3d at 1317.  The prosecution history is important because it "can often

3

inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Id.  Statements made by the patentee in related patent applications are similarly relevant to claim construction.  See Microsoft Corp. v. Multi-Tech Sys., 357 F.3d 1340, 1350 (Fed. Cir. 2004).

Thus, "[t]he intrinsic record in a patent case is the primary tool to supply the context for interpretation of disputed claim terms." V-Formation, Inc. v. Benetton Group SpA, 401 F.3d 1307, 1310 (Fed. Cir. 2005) (citing Vitronics, 90 F.3d at 1582).  "This tool usually provides the technological and temporal context to enable the court to ascertain the meaning of the claim to one of ordinary skill in the art at the time of invention."  Id.  Nevertheless, the Federal Circuit has "also authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'"  Phillips, 415 F.3d at 1317 (quoting Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995)).

## II.   VETO'S INCORRECT RECITATION OF CLAIM CONSTRUCTION LAW

Prior to the Federal Circuit's decision in Phillips, courts were split between two competing approaches to claim construction.  One, exemplified by Vitronics Corp. v. Conceptronic, 90 F.3d 1576 (Fed. Cir. 1996) and its progeny, held that the intrinsic record had primary

importance in the claim construction analysis.  The other, exemplified by

Tex. Digital Sys. v. Telegenix, Inc., 308 F.3d 1193 (Fed. Cir. 2002), held that

a claim term should be given its ordinary meaning as provided by a

dictionary definition unless the patentee had acted as his own

lexicographer and defined the term differently or explicitly disclaimed

certain claim scope in the specification.

In Phillips, the Federal Circuit sitting *en banc*, resolved this conflict

and adopted the Vitronics approach:

> In effect, the Texas Digital approach limits the role of the
> specification in claim construction to serving as a check on
> the dictionary meaning of a claim term if the specification
> requires the court to conclude that fewer than all the
> dictionary definitions apply, or if the specification contains a
> sufficiently specific alternative definition or disavowal.  That
> approach, in our view, improperly restricts the role of the
> specification in claim construction.

> Assigning such a limited role to the specification, and in
> particular requiring that any definition of claim language in the
> specification be express, is inconsistent with our rulings that
> the specification is "the single best guide to the meaning of a
> disputed term," and that the specification "acts as a dictionary
> when it expressly defines terms used in the claims or when it
> defines terms by implication."

Phillips, 415 F.3d at 1320-21 (quoting Vitronics, 90 F.3d at 1582) (internal

citations omitted).

Veto's assertion that courts should only consider intrinsic evidence

"under limited circumstances" harkens back to the time prior to Phillips

and the rejected approach of Texas Digital.  And the case Veto cites in

support of its view, Interactive Gift Express, Inc. v. Compuserve Inc., 256

F.3d 1323 (Fed. Cir. 2001), predates <u>Phillips</u> by four years.[1]  Veto's statement of claim construction law has been rejected by the Federal Circuit and must be rejected by the Court.

Veto's second error is to perform claim construction by merely stating "[o]rdinary and common meaning; no further construction necessary" without explaining what that meaning is or consulting the intrinsic record.  (Pl. Markman Brief at 6, 11, 12, 14 and 17.)  The Federal Circuit has expressly stated that a "determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."  <u>O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.</u>, 521 F.3d 1351, 1361 (Fed. Cir. 2008).

With respect to the "having a handle" term, for example, simply repeating the invocation "ordinary and common meaning; no further construction necessary" as Veto does, is essentially meaningless.  (Pl. Markman Brief at 12.)  When the claims recite that the bag has a central panel-like member "having a handle," this can mean that the handle is attached to the panel, is formed by an opening in the panel, or both.  Veto's appeal to "ordinary and common meaning" without more does nothing to

---

[1] The statement Veto quotes from <u>Interactive Gift Express</u>, "[i]f the claim language is clear on its face, then the court's consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified," has never been repeated by the Federal Circuit post-<u>Phillips</u>.

resolve the dispute between the parties, which is precisely whether or not the scope of the claim is restricted to a handle formed by an opening in the panel.  Veto's approach to claim construction is error and must be rejected.

<u>THE CLAIMS OF THE '003 PATENT</u>

The '003 patent is generally directed to a bag for carrying tools and other items.  It has two independent claims, claim 1 and 23:

<u>Claim 1</u>:

A tool bag for holding, manually transporting and providing easy accessibility to a plurality of workmen tools by a user, the tool bag comprising:  <u>a bottom member</u>, said bottom member defining a <u>flat surface</u> upon which the tool bag can be rested; <u>a central, generally rigid panel-like member</u> extending substantially normal to said bottom member and <u>having a handle</u> to be gripped by the user; and a fabric body portion attached to said central, generally rigid panel-like member and thereby forming at least one <u>enclosure</u> for the workmen tools.

<u>Claim 23</u>:

A bag for providing easy manual transport thereof by a user, the bag comprising:  a bottom member, said bottom member defining a flat surface upon which the bag can be rested; a central generally rigid <u>frame member</u> centrally located on and attached to said bottom member so as to extend substantially normal to said bottom member and having a handle to be gripped by the user; and a fabric body portion attached to said bottom member and said central generally rigid frame member thereby forming at least one enclosure.

(Ex. 2, '003 patent, Claims 1 and 23, emphasis added.)

The parties have agreed that the meaning and scope of the underlined terms are in dispute and require the Court's construction.  The parties have further agreed that to the extent these terms occur in other

claims of the '003 patent that Veto contends are infringed, they should be given the same meaning and scope as they are given in the claims above.[2]

<u>CONSTRUCTION OF DISPUTED CLAIM TERMS</u>

CLC proposes that the Court construe the terms "enclosure," "flat surface," "a bottom member," "a central, generally rigid panel-like member," "having a handle" and "frame member" as set forth below.[3]

I.    ENCLOSURE

"Enclosure" should be construed to mean:

*completely enclosed space*

A review of the intrinsic record demonstrates that the claimed "enclosure" is a completely enclosed space that may be opened to gain access to the tools stored in bag.  The "Background" section of the specification lists a number of bags that were on the market prior to the alleged "invention" and explains that they all have various drawbacks. (Ex. 2, '003 patent, Col. 1, ll. 10-61.)  The last product mentioned is the "Bucket Boss," a bag designed to fit over and inside an empty 5-gallon plastic bucket.  (<u>Id.</u>, ll. 44-61.)  One of the stated drawbacks of the Bucket Boss is that "[i]f the bucket tips over, everything stored therein can spill out."  (<u>Id.</u>, ll. 60-61.)  In the next paragraph, the specification states that "[i]t

---

[2] CLC agrees with Veto's construction of "normal" to mean "perpendicular."  (Pl. Markman Brief at 11.)  CLC does not contend that the term "plastic" in claim 28 requires construction for the purpose of resolving the infringement allegations that have been raised in this case. (<u>Id.</u> at 17.)

[3] For the Court's convenience, a chart showing the parties' proposed constructions side by side is attached as Exhibit 1.

is an object of the present invention to provide a novel tool bag which overcomes the drawbacks of the commercially available tool bags and boxes."  (Id. ll. 68-68.)  One of skill in the art reading the specification would therefore understand that the bag claimed in the patent would prevent the items stored in it from spilling out if it were to tip over.  See, e.g., Kyocera Wireless Corp. v. ITC, 545 F.3d 1340, 1347-1348 (Fed. Cir. 2008) (relying in part of the patentee's description of need created by prior art devices in the Background section to construe a claim term); Ormco Corp. v. Align Tech., Inc., 498 F.3d 1307, 1313 (Fed. Cir. 2007) (using the patentee's description of the difficulties encountered in the prior art to help determine the scope of the invention).[4]

The specification clearly explains that it is the enclosure that accomplishes this goal:

> Once the tool bag 10 is loaded, the fabric cover panels 64 can be returned to their closed position using the zipper closure members 77 (see FIG. 1).  In this closed position, the tools are fully enclosed in the tool bag 10 so the tools will not come out of the tool bag 10 during carrying and transport or in the event the tool bag 10 is accidentally knocked over once it is laid to rest.

---

[4] Veto states that "[g]eneral criticism, of the prior art does not serve to limit a patent's claims" and cites Ventana Med. Sys. v. Biogenex Labs., Inc., 473 F.3d 1173, 1180 (Fed. Cir. 2006) and O.I. Corp. v. Tekmar Co., 115 F.3d 1576, 1581 (Fed. Cir. 1997).  (Pl. Markman Brief at 15.)  These cases do not support Veto's general statement.  In Ventana, the court held that a statement in the Background section could not have been a disavowal of scope because it would entail that the patentee had disclaimed the patent's preferred embodiment.  O.I. Corp. does not appear to address the issue at all.

(<u>Id.</u>, Col. 5, Il. 3-8.)  Indeed, the specification is replete with statements demonstrating that the enclosure is a completely enclosed space.  In the Abstract, for example, the patentee states that "[t]he fabric body portion also has <u>a pair of fabric cover panels which enclose the tools within the</u> <u>tool bag.  The tools within the tool bag</u> <u>*are secured from view*</u>, compactly stored in an organized manner and easily carried."  (<u>Id.</u>, Abstract, emphasis added.)  Obviously, the tools are only secured from view if the enclosure is a completely enclosed space.

Furthermore, the Summary of the Invention section states that "[a] fabric body portion is attached to the body member and central panel-like member to thereby form at least one enclosure for the workmen tools." (<u>Id.</u>, Col. 2, Il. 19-22.)  "Conveniently, the fabric body member includes two cover panels on each side of the central-panel like member so as to provide access to the at least one enclosure for the workmen tools.  The cover panels each having a zipper closure member attached thereto."  (<u>Id.</u>, Il. 52-56.)  Thus, to gain access to the tools that are enclosed in the claimed bag, the cover panels must be unzipped.  This, again, is only required if the enclosure is a completely enclosed space.

The claimed invention requires that the enclosure must be opened to gain access to the items stored in the bag.  This is again emphasized in the "Detailed Description" section:  "In use, the user of the tool bag 10 of <u>the</u> <u>present invention</u> can open the two fabric cover panels 64 by unzipping the zipper closure members 72 thereby providing access to the interior of the

10

tool bag as seen in FIG. 6."  (Id., Col. 4, ll. 59-63, emphasis added.)  Of course, the very fact that the enclosure must be "opened" in order to be accessed means that, when not opened, it is otherwise fully enclosed.

Finally, every single figure in the patent that displays the fabric body shows the fabric cover panels 64, which are components of the fabric body member 16, completely surrounding and enclosing the interior of the tool bag or having the possibility of doing so.  (Id., Figs. 1-3, 5, 6, 8, 10, 11.)



FIG. 1

FIG. 6

(Ex. 2, '003 patent, Figs. 1, 6.)  In sum, the specification leaves no doubt that the claimed "enclosure" is a completely enclosed space.

The inventor confirmed that this is the case in the prosecution of both the '003 patent and the related U.S. Patent No. 6,915,902 ("the '902

11

patent").[5]  As discussed earlier, the Examiner rejected all the claims as

anticipated by U.S. Patent No. 5,797,491 to Fierek, et al. ("Fierek") during

the prosecution of the '003 patent.  To overcome this rejection, the inventor

distinguished Fierek as follows:

> Fierek et al.'s development to include a completely fabric bag
> with a cinch-up closing feature is completely the opposite
> principle from the present invention where the central
> panel/frame member 14 is secured to the bottom member 12 to
> provide a sturdy structural frame for applicant's tool bag 10
> (see page 6, second paragraph of the present application) <u>and
> closure of applicant's tool bag 10 is accomplished by cover
> panels 64</u>.

(Ex. 3, '003 Pros. Hist., Amendment in Response to Paper No. 3, at 5,

emphasis added.)  Furthermore, to overcome the Examiner's rejection for

anticipation by the '003 patent (referred to as "Brouard") during the

prosecution of the '902 patent, the patentee stated that "[t]he fabric body

portion also has a pair of fabric cover panels <u>that enclose the tools within

the tool bags</u>."  (Ex. 4, '902 Pros. Hist., Feb. 25, 2005 Reply to Final Office

Action, p. 5, emphasis added.)  These statements to the Patent Office

confirm that the "enclosure" claimed in the '003 patent is a completely

enclosed space.

CLC's proposed construction of "enclosure" is required by the

numerous and uniform disclosures and statements in the specification and

---

[5] The '902 patent is attached as Exhibit B to Veto's Complaint.  Veto
voluntarily dismissed with prejudice its allegation that the '902 patent was
infringed on April 8, 2009.  (Doc. No. 45.)  The '902 patent has the same
named inventor and title as the '003 patent and is directed to almost
identical subject matter (during prosecution of the '902 patent, the
Examiner rejected the application as anticipated by or obvious over the
'003 patent on four separate occasions).

prosecution histories and should be adopted by the Court.  By contrast, Veto has failed to offer <u>any</u> support from the intrinsic records for its construction and relies entirely on a dictionary definition – "a structure consisting of an area that has been enclosed for some purpose" – that does nothing to resolve the point of controversy between the parties.  (Pl. Markman Brief at 14-15.)  Moreover, Veto's construction is implausible on its face since it specifies that the enclosure is only for "workmen tools."  Claim 23, which also contains the "enclosure" limitation, contains no reference to workmen tools and is unlikely to be so limited.  The Court should therefore reject Veto's proposal.

II.    FLAT SURFACE

"Flat surface" should be construed to mean:

*a continuous horizontal surface*

This construction is provided by the claim and the specification, which both provide that the bottom member "defines" a flat surface.  (Ex. 2, '003 patent, Claim 1; Col. 2, ll. 14-16.)  Furthermore, every embodiment and figure in the patent depicts a bottom member with a continuous horizontal surface.  (<u>Id.</u>, Figs. 1-11.)  Finally, this construction is in full accord with the ordinary meaning of "flat," which is "having a continuous horizontal surface."  Merriam-Webster's Collegiate Dictionary (10th ed. 1998).

Veto does not provide a proposed construction but merely states that "flat" should have its "[o]rdinary and common meaning; no further construction necessary."  (Pl. Markman Brief at 6.)  When arguing against

13

CLC's proposed construction, however, Veto appears to contend that "flat" is defined by the claim language "upon which the tool bag can be rested." (Id. at 9.)   Veto states that "[i]f it [is] a surface upon which the tool bag can be rested then it is 'flat'."  (Id.)  This is nonsensical and effectively reads the "flat" limitation right out of the claim.  The bottom of a tool bag could have any number of shapes other than flat and still be capable of having the bag rest on it.  Such a construction would, therefore, be contrary to the ordinary meaning of "flat," and it has no support in the intrinsic record.

CLC's proposed construction of "flat surface" arises from the claim language and the specification and is in accord with the ordinary meaning of the term.  It should therefore be adopted by the Court.

III.    A BOTTOM MEMBER

"A bottom member" should be construed as follows:

*a tray-shaped member providing structural support for the tool bag*

There are two elements of CLC's proposed construction: "tray-shaped" and "providing structural support."

A.    <u>Tray-Shaped</u>

The specification and statements of the inventor to the Patent Office require that the "bottom member" be construed as "tray-shaped."  While it is correct, as Veto points out, that the reference to the tray-shaped bottom member in the Summary section of the specification is prefaced with the word "desirably," Veto leaves out that in the Detailed Description section, the patentee states unambiguously that the bottom member of his

14

invention is tray-shaped:  "As seen in FIGS. 7 and 8, the bottom member 12 is formed in the shape of a tray.  .  .  ."  (<u>Id.</u>, Col. 3, ll. 24-25.)  In fact, every disclosed embodiment in the '003 patent has a bottom member that is tray-shaped.  (<u>Id.</u>, Figs. 1-8, 10-11.)  Furthermore, the patent teaches a single way to attach the fabric body of the claimed bag to the bottom member, namely stitching it "to the periphery of the bottom member 12."  (<u>Id.</u>, Col. 4, ll. 32-34.)  This requires that the bottom member is tray-shaped.  (<u>Id.</u>, Fig. 8 (numeral 58).)

That the tray-shaped bottom member is an integral part of the claimed invention was also explicitly stated by the patentee during the prosecution of the related '902 patent.  Seeking to overcome an obviousness rejection based in part on the '003 patent (referred to as "Brouard"), the patentee stated that "Brouard is directed to a tool bag having a central panel that defines a handle.  The tool bag includes a bottom member <u>formed in the shape of a tray</u>. . . ."  (Ex. 4, '902 Pros. Hist., April 6, 2004 Response to Office Action, p. 6, emphasis added.)  Again, the public is entitled to rely on the patentee's own characterization of his invention in official correspondence to the Patent Office.  <u>See, e.g.</u>, <u>Springs Window Fashions LP v. Novo Indus., L.P.</u>, 323 F.3d 989, 995 (Fed. Cir. 2003) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent.").

Veto claims that CLC's proposed construction is improper because it imports a limitation from a single embodiment.  (Pl. Markman Brief at 7.)  But <u>every</u> embodiment disclosed by the '003 patent has a tray-shaped bottom member.  (Ex. 2, '003 patent, Col. 5, ll. 12-26; Figs. 10, 11.)  The Federal Circuit has repeatedly emphasized the fundamental principle of claim construction that "claims must be read in view of the specification, of which they are a part."  <u>Phillips</u>, 415 F.3d at 1315 (internal quotation marks omitted).  Following the directives of <u>Phillips</u>, the Federal Circuit has consistently limited the scope of claim terms to be commensurate with the disclosures in the specification.

For example, in <u>On Demand Mach. Corp. v. Ingram Indus.</u>, 442 F.3d 1331 (Fed. Cir. 2006), the Federal Circuit explained that "the claims cannot be of a broader scope than the invention that is set forth in the specification" and limited the construction of "customer" to "retail customer" because the specification made it clear that the invention was directed towards such customers.  <u>Id.</u> at 1340.  In <u>ICU Med.</u>, the Federal Circuit similarly limited the construction of the disputed claim term to match the disclosure set forth in each embodiment of the patent:

> To the extent ICU argues that the '447 patent discloses a preslit trampoline seal that could possibly work without a spike (or with a nonpointed structure), every embodiment in the specification including the preslit trampoline seal uses a spike to pierce the seal.

<u>ICU Med.</u>, 558 F.3d at 1375 n.4.

The case cited by Veto, <u>Liebel-Flarsheim Co. v. Medrad, Inc.</u>, 358 F.3d 898 (Fed. Cir. 2004), also recognized this requirement, explaining that

"[w]hether a claim must, in any particular case, be limited to the specific embodiment presented in the specification, depends in each case on the specificity of the description of the invention and on the prosecution history."  Id. at 908 (quoting Cultor Corp. v. A.E. Staley Mfg. Co., 224 F.3d 1328, 1331 (Fed. Cir. 2000)).  In Liebel-Flarsheim, the court did not limit the claim to the disclosed embodiment because the specification did not otherwise "describe the invention as limited to embodiments having pressure jackets" and the relevant prosecution histories were "squarely contrary to its contention that all the claims of those two patents require injectors that use pressure jackets."  Id. at 908-09.  In this case, by contrast, the scope of the bottom member is limited to a tray-shape not only by the uniform disclosed embodiments but also by the patentee's description of his invention in the specification and express statement to the Patent Office.

       Veto finally invokes the doctrine of claim differentiation and asserts that CLC's proposed construction would render dependent claims 2 and 24 superfluous since they "further define 'the bottom member' as comprising a 'tray.'"  (Pl. Markman Brief at 8.)  But claim differentiation, which is a limited doctrine to begin with, does not apply if there are other differences in scope between the claims in question.  See, e.g., Andersen Corp. v. Fiber Composites, LLC, 474 F.3d 1361, 1370 (Fed. Cir. 2007) (refusing to apply claim differentiation doctrine because the claims were "not otherwise identical").  Here, both claim 2 and 24 require that the bottom member be

17

made of "plastic," a limitation that is not present in either claim 1 or 23. (Ex. 2, '003 patent, Claims 1-2, 23-24.)  As such, the doctrine of claim differentiation does not apply.

Even if the dependent claims lacked other differences, however, "the doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence."  <u>Multiform Desiccants, Inc. v. Medzam Ltd.</u>, 133 F.3d 1473, 1480 (Fed. Cir. 1998).  Because the intrinsic record requires that the scope of the "bottom member" is limited to a tray-shape, Veto's appeal to claim differentiation must in any case be rejected.

B.   <u>Providing Structural Support</u>

The specification of the '003 patent teaches that the bottom member provides "structural support" for the bag:  "The bottom member and central panel member provide a structural support for the fabric body portion."  (Ex. 2, '003 patent, Abstract.)  Furthermore, during prosecution of the '003 patent, the Examiner rejected the application as anticipated by Fierek.  To overcome this rejection, the patentee characterized his invention as follows:

> Thus, Fierek et al.'s development to include a completely fabric bag with a cinch-up closing feature is completely the opposite principle from the present invention where the central panel/frame member 14 is secured to the bottom member 12 to provide <u>a sturdy structural frame</u> for the applicant's tool bag 10. . . .

18

(Ex. 3, '003 Pros. Hist., March 30, 2000 Amendment in Response to Paper No. 3, p. 5, emphasis added.)  Thus, the patentee explicitly stated that, in contrast to the bag disclosed in Fierek, the bottom member of his invention is part of the bag's "sturdy structural frame."

Furthermore, on multiple occasions during the prosecution of the related '902 patent, the patentee characterized his own invention in the '003 patent in the same way:  "The bottom member and the central panel member provide structural support for the fabric body portion."  (Ex. 5, '902 Pros. Hist., Aug. 6, 2004 Response to Final Office Action, p. 4; Ex. 6, '902 Pros. Hist., Nov. 23, 2004 Response to Office Action, p. 4; Ex. 7, '902 Pros. Hist., Feb. 25, 2005 Reply to Final Office Action, p. 4-5.)  The public is entitled to rely on the patentee's own statements about the scope of his invention during prosecution.  Springs Window, 323 F.3d at 995.

As demonstrated above, CLC's proposed construction of "a bottom member" is provided by the clear disclosures in the specification and the inventor's own statements to the Patent Office.  By contrast, Veto offers no support for its proposed construction of "a bottom member" as "an outer bottom surface of the tool bag."  Its only affirmative statements on behalf of its construction are the following:

> Plaintiff essentially believes the language is clear on its face and accordingly has provided essentially only the addition of "outer bottom surface of the tool bag" to provide a spatial orientation to the term "bottom member."  This is felt to be essentially ordinary and common meaning of this element.

(Pl. Markman Brief at 6.)  "A bottom member" is not, however, a term with such self-evident meaning and scope that construction is not required. Nor are Veto's beliefs and feelings about the words of the claims relevant to the construction of this or any other disputed term.  The relevant question is what meaning the term would have to a person of ordinary skill in the art in question at the time of the invention who has "read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  <u>ICU Med</u>, 558 F.3d at 1374 (quoting <u>Phillips</u>, 415 F.3d at 1313).  CLC's claim construction answers that question; Veto's does not. The Court should therefore adopt CLC's proposed construction.

**IV.    A CENTRAL, GENERALLY RIGID PANEL-LIKE MEMBER**

"A central, generally rigid panel-like member" should be construed to mean:

> *a stiff and inflexible panel-like member situated substantially in the center of the bag*

There are two aspects of this term that require construction: "central" and "generally rigid."

**A.    <u>Central</u>**

The intrinsic record requires that "central" have its ordinary meaning of "substantially in the center of the bag."  The specification states, for example, that the "central generally rigid panel-like member is centrally located on and attached to the bottom member. . . ."  (Ex. 2, '003 patent, Col. 2, ll. 16-18.)  It further provides that "[t]he fabric body portion on each

side of the central panel member is identical so its design and construction will be explained with reference to only one side of the central panel member."  (Id., Col. 3, ll. 56-59.)  The fabric body portion on each side of the central panel member can only be identical, of course, if the central panel sits in the center of the bag.  And as is readily apparent from the figures, every disclosed embodiment teaches a central panel that sits in the center of the bag and divides the interior of the bag into two substantially equal portions.  (Id., Figs. 3, 5-9.)



(Ex. 2, '003 patent, Figs. 7, 8.)

The patentee also reiterated that the central panel is located in the middle of the bag during prosecution.  When distinguishing Fierek to overcome the Examiner's rejection, the patentee explained that "[t]he generally rigid centrally located panel/frame member 14 of applicant's

21

invention also has the advantage of having a handle 28 which centers the load of applicant's tool bag making it easier to carry and handle."  (Ex. 3, '003 patent Pros. Hist., March 30, 2000 Amendment in Response to Paper No. 3, p. 5.)  The load is only centered if the central panel with a handle is located in the middle of the bag.

Finally, CLC's construction is in accord with the ordinary meaning of "central," i.e., "situated at, in, or near the center."  Merriam-Webster's Collegiate Dictionary (10th ed. 1998).

Veto offers no proposed construction of "central" but merely repeats the phrase "Ordinary and common meaning; no further construction needed."  (Pl. Markman Brief at 11.)  This is both essentially meaningless and disingenuous.  In this litigation, Veto accused CLC bags of infringing the '003 patent that, if "central" has its ordinary meaning of being in the center, do not have any central structure.[6]  Thus, it is important that the Court provide a construction of the term to clarify its meaning.

Veto also repeats its incorrect view that the court should not consider the intrinsic evidence if the claim language is clear on its face.  (Id. at 12.)  As mentioned earlier, Veto relies on Interactive Gift Express, 256 F.3d 1323, a pre-Phillips case, for this incorrect proposition.  Even if it were a correct statement of the law, moreover, the court would be required to

---

[6] Although the Court should not construe claim terms in reference to an accused product, "it is appropriate for a court to consider the accused device when determining what aspect of the claim should be construed. . . ."  Cohesive Techs., Inc. v. Waters Corp., 543 F.3d 1351, 1367 (Fed. Cir. 2008).

review the specification for the meaning of "central" because its meaning is not "clear on its face."  As just discussed, the parties dispute the meaning of "central" with Veto contending that a panel CLC would characterize as an outer panel is actually a "central" panel.  In such cases, even Veto's outdated case law would require a review of the intrinsic record.  <u>Interactive Gift Express</u>, 256 F.3d at 1331.

      **B.**    <u>**Generally Rigid**</u>

      The intrinsic records demonstrated that "generally rigid" means "stiff and inflexible."  As discussed earlier, both the specification and the prosecution histories emphasize that the bottom member and central panel-like member provide "structural support" for the bag.  (Ex. 2, '003 patent, Abstract; Ex. 3, '003 Pros. Hist., Feb. 4, 2000 Office Action, p. 2; Ex. 5, '902 Pros. Hist., Aug. 6, 2004 Response to Final Office Action, p. 4; Ex. 6, '902 Pros. Hist., Nov. 23, 2004 Response to Office Action, p. 4; Ex. 7, '902 Pros. Hist.,  Feb. 25, 2005 Reply to Final Office Action, p. 4-5.)  The panel-like member can only provide structural support if it is stiff and inflexible.  This construction is, finally, consonant with the ordinary meaning of "rigid," which is "deficient in or devoid of flexibility."  Merriam-Webster's Collegiate Dictionary (10th ed. 1998).

      Veto proposes that the term be construed to mean "more rigid than not allowing some degree of flexibility."  (Pl. Markman Brief at 11.)  It appears to claim that this is "essentially" the ordinary meaning of the term

but has failed to offer any evidence whatsoever in support of its construction.

In sum, CLC's construction of "a central, generally rigid panel-like member" is provided by the intrinsic record and comports with the ordinary meaning of words.  Veto's proposed construction, by contrast, and to the extent Veto has even offered one, has no support at all.  The Court should therefore adopt CLC's proposed construction.

V.     HAVING A HANDLE

"Having a handle" should be construed to mean:

*a handle formed by an opening in the central panel*

Both the '003 patent itself and the patentee's characterization of his invention in the '003 patent during prosecution of the related '902 patent makes it clear that the handle must be formed by an opening in the central panel.

First, the specification explicitly states that "[a]ccording to the invention, the central panel-like member has an opening defined therein adjacent an upper end thereof to form the handle."  (Ex. 2, '003 patent, Col. 2, ll. 33-35, emphasis added.)  The Federal Circuit has explained that when the patentee prefaces a feature with the words "according to the invention," that feature is required by the invention itself and not merely by a possible embodiment of the invention.  See Gaus v. Conair Corp., 363 F.3d 1284, 1290 (Fed. Cir. 2004).  Furthermore, each and every embodiment that is disclosed in the specification shows a handle that is formed by an

24

opening in the central panel.  (Ex. 2, '003 patent, Col. 3, ll. 43-44; Figs. 1-3, 5-8, 10-11.)

Moreover, during prosecution of the related '902 patent, the Examiner repeatedly rejected the application as either anticipated by the '003 patent (called "Brouard" by the Examiner) or obvious over the '003 patent in combination with other prior art.  To overcome these rejections, the patentee explicitly and repeatedly stated that the handle in the '003 patent is part of the central panel:

- "Brouard is directed to a tool bag having <u>a central panel that defines a handle</u>."  (Ex. 4, '902 Pros. Hist., April 6, 2004 Response to Office Action, p. 6, emphasis added.)

- "The '003 patent is directed to a tool bag having a bottom member, a central panel member and a fabric body portion. . . . <u>The central panel member has a handle formed thereon</u> enabling the user to easily lift and carry the tool bag. . . . Unlike the invention recited in claim 22 of the instant patent application, the '003 reference does not teach or suggest "a handle coupled to a bag body defined by said tool bag." <u>Instead, the '003 reference teaches, and claims, that the central panel member includes a handle formed thereon</u>.  As such, the '003 reference teaches away from the present invention and cannot form the basis for a section 103 rejection."  (Ex. 5, '902 Pros. Hist., Aug. 6, 2004 Response to Final Office Action, p. 4, emphasis added.)

- "Brouard is directed to a tool bag having a bottom member, a central panel member and a fabric body portion. . . . <u>The central panel member defines a handle</u> to enable the user to lift and carry the tool bag. . . . However, Brouard does not teach or suggest a tool bag including a bottom portion, a bag body, and a generally rigid handle pivotally coupled to the bag body, as generally recited in amended independent claim 22 of the present application.  Unlike the invention as recited in claim 22, <u>Brouard shows a generally rigid central panel member defining a handle. . . . Because the handle shown in Brouard is part of the rigid, central panel member, the handle cannot pivot relative to the panel member or the bag body</u>."

25

(Ex. 6, '902 Pros. Hist., Nov. 23, 2004 Response to Office
Action, p. 4, emphasis added.)

- "Brouard fails to disclose, teach, or suggest a tool bag having
  a single handle . . . as recited in claim 22.  In the Brouard bag,
  the handle is integral with a central panel member (shown at
  14 in Figure 7). . . . The handle of the Brouard bag actually
  forms part of the rigid, central panel."  (Ex. 7, '902 Pros. Hist.,
  Feb. 25, 2005 Reply to Final Office Action, p. 5, emphasis
  added.)

Veto contends that the patentee's statements during the prosecution

of the '902 patent are somehow unimportant or improper.[7]  (Pl. Markman

Brief at 10, 14.)  Veto fails to support this contention with even a single

authority, however, and the Federal Circuit has said exactly the opposite:

> Any statement of the patentee in the prosecution of a related
> application as to the scope of the invention would be relevant
> to claim construction, and the relevance of the statement
> made in this instance is enhanced by the fact that it was made
> in an official proceeding in which the patentee had every
> incentive to exercise care in characterizing the scope of its
> invention.

Microsoft Corp. v. Multi-Tech Sys., 357 F.3d 1340, 1350 (Fed. Cir. 2004).

See also Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc., 450 F.3d 1350,

1357 (Fed. Cir. 2006) (finding no error in the district court's reliance on

statements made during prosecution of a related application).  Here, the

inventor of the '003 patent characterized his own invention, on the public

record, during the prosecution of a patent with almost the identical subject

matter, for the purpose of avoiding a rejection based on the '003 patent.

---

[7] Veto also asserts that the statements made during prosecution were only
referring to dependent claim 8 and 29 rather than the overall scope of the
invention claimed in the '003 patent.  (Veto's Brief at 14.)  There is no
support for this assertion and the statements cited above demonstrate that
it is incorrect.

The public is entitled to rely on these statements and they are highly relevant to determining the proper meaning and scope of the claim term. Springs Window, 323 F.3d at 995.

Veto also asserts that the Court should not adopt CLC's construction on the basis of claim differentiation.  As the case cited by Veto points out, however, claim differentiation is only a "limited tool of claim construction." Curtiss-Wright Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1378 (Fed. Cir. 2006) (rejecting a construction based on claim differentiation because it was "not consistent with the overall context of this invention and this field of art as described in the specification").  Thus, claim differentiation "can not broaden claims beyond their correct scope." Id. at 1381.  In fact, "[c]laim differentiation is a guide, not a rigid rule.  If a claim will bear only one interpretation, similarity will have to be tolerated."  ICU Med., 558 F.3d at 1376 (upholding a construction informed by the specification when "claim differentiation counsel[d] against" the construction).  See also Netcraft Corp. v. Ebay, Inc., 549 F.3d 1394, 1400 n.1 (Fed. Cir. 2008) (rejecting construction based on claim differentiation); Realsource, Inc. v. Best Buy Co., 282 Fed. Appx. 821, 827 (Fed. Cir. 2008) ("[T]he doctrine of claim differentiation is a presumption, not a rigid rule.  If a patent's specification makes clear the scope of the claim language, claim differentiation cannot be used to broaden the claim's scope.") (internal citation omitted).

27

Here, the specification explicitly specifies that "the invention" requires that the handle is formed by an opening in the central panel, every embodiment displays a handle formed by an opening in the central panel, and the inventor himself stated to the Patent Office on multiple occasions that the handle is formed by an opening in the central panel.  Therefore, to the extent claim differentiation creates a presumption against CLC's construction, that presumption is trumped by the intrinsic record.

CLC's construction is mandated by the intrinsic record and should be adopted by the Court.  Veto offers no proposed construction of "having a handle" but merely repeats the meaningless phrase:  "Ordinary and common meaning; no further construction needed."  (Pl. Markman Brief at 12.)  Veto's attempt at claim construction must be rejected.

## VI.   FRAME MEMBER

The term "frame member" as it appears in claim 23 of the '003 patent should be construed to have the same meaning as "panel-like member" in claim 1.  This construction is required by the claim language itself, the specification and the prosecution history.

First, similar to claim 1, claim 23 as requires that the frame member (or panel-like member) be attached to the fabric body portion and the bottom member "thereby forming at least one enclosure."  (Ex. 2, '003 patent, Claims 1, 23.)  Using either party's construction of "enclosure," this is only possible if the frame member is a panel.

Furthermore, the specification repeatedly describes the central member as a panel or as panel-like.  (Id., Abstract; Col. 2, ll. 2, 5, 15, 19-20, 27, 31, 33, 53; Col. 3, ll. 28-29, 30-31, 36, 39, 43, 52, 57, 59, 61; Col. 4, ll. 23, 55; Col. 5, ll. 8-9.)  Indeed, the specification states that "according to the invention," the bag has a "central panel-like member."  (Id., Col. 2, ln. 33.) And in both figures where the central member is fully illustrated, it is depicted as a panel.  (Id., Figs. 7, 8.)

The only mention of "frame member" in the specification explicitly identifies it with a panel:  "The tool bag 10 comprises a substantially rectangular bottom member 12 having <u>a central panel or frame member 14</u> extending substantially normal thereto. . . ."  (Id., Col. 3, ll. 19-22, emphasis added.)  The numeral "14" corresponds to the panel depicted in Fig. 7.  (Id., Fig. 7.)

During the prosecution of the '003 patent, when overcoming the Examiner's rejection over Fierek, the patentee confirmed that "frame member" has the same meaning as "panel-like member:"

> Fierek et al.'s development to include a completely fabric bag with a cinch-up closing feature is completely the opposite principle from the present invention where <u>the central panel/frame member 14</u> is secured to the bottom member 12 to provide a sturdy structural frame for applicant's tool bag 10 (see page 6, second paragraph of the present application) and closure of applicant's tool bag 10 is accomplished by cover panels 64. . . . <u>The generally rigid centrally located panel/frame member 14 of applicant's invention also has the advantage of having a handle 28</u>. . . ."

(Ex. 3, '003 Pros. Hist., Amendment in Response to Paper No. 3, at 5, emphasis added.)  Moreover, as discussed earlier, during the prosecution

of the '902 patent the inventor repeatedly told the Examiner that his invention in the '003 patent required a "central panel."  <u>Supra</u>, at 25-26.

Veto's only argument against CLC's proposed construction is an assertion that it would "violate the claim differentiation concept" because it would make claim 23 have the same claim coverage as claim 1.  (Pl. Markman Brief at 17.)  This is incorrect for a number of reasons.  First, Veto is simply wrong when it states that claim differentiation "applies with equal force" when two independent claims are at issue, as opposed to when there is one independent and one dependent claim.  The case Veto itself cites, <u>Curtiss-Wright</u>, 438 F.3d 1374, states that "the claim differentiation tool works best in the relationship between independent and dependent claims."  <u>Id.</u> at 1380.  With respect to a situation where, as here, there are two independent claims, the Federal Circuit explained that "claim drafters can also use different terms to define the exact same subject matter. Indeed this court has acknowledged that two claims with different terminology can define the exact same subject matter."  <u>Id.</u> at 1380-81 (citing <u>Hormone Research Found. v. Genentech, Inc.</u>, 904 F.2d 1558, 1567 n.15 (Fed. Cir. 1990) ("It is not unusual that separate claims may define the invention using different terminology, especially where (as here) independent claims are involved.")).  Thus, Veto's appeal to claim differentiation has little, if any, merit.

Moreover, claim differentiation does not apply if there is any difference in scope between the claims in question.  <u>See, e.g.</u>, <u>Andersen</u>,

**474 F.3d at 1370.  As the chart below demonstrates, there are several**

**differences between claims 1 and 23 (differences are underlined):**

| Claim 1 | Claim 23 |
|---|---|
| A <u>tool</u> bag for <u>holding</u>, manually transporting and <u>providing easy accessibility to a plurality of workmen tools</u> by a user, the <u>tool</u> bag comprising: | A bag for providing easy manual transport thereof by a user, the bag comprising: |
| a bottom member, said bottom member defining a flat surface upon which the <u>tool</u> bag can be rested; | a bottom member, said bottom member defining a flat surface upon which the bag can be rested; |
| a central, generally rigid panel-like member extending substantially normal to said bottom member and having a handle to be gripped by the user; and | a central generally rigid frame member centrally located on and <u>attached to said bottom member</u> so as to extend substantially normal to said bottom member and having a handle to be gripped by the user; and |
| a fabric body portion attached to said central, generally rigid panel-like member and thereby forming at least one enclosure <u>for the workmen tools</u>. | a fabric body portion attached to said bottom member and said central generally rigid frame member thereby forming at least one enclosure. |

**(Ex. 2, '003 patent, Claims 1, 23.)**

**Finally, even if claim differentiation did apply in this case, which it**

**does not, the weak presumption it affords would be overcome by the**

**numerous statements and disclosures in the intrinsic record**

**demonstrating that "frame member" means the same as "panel-like**

**member."  See, e.g., Multiform, 133 F.3d at 1480.**

**Veto has again proposed a construction without offering any support**

**from the specification or prosecution history.  (Pl. Markman Brief at 16-17.)**

**All it has provided is a dictionary definition of "frame" as "structure that**

**gives shape or support: the frame of a house."  This, however, is not claim**

construction, and the Court should reject Veto's proposal and adopt CLC's proper construction of "frame member."

## CONCLUSION

For the foregoing reasons,  CLC respectfully requests that the Court

adopt its proposed constructions of the disputed claims terms.

Dated:  May 13, 2009                          Respectfully Submitted,


                                               /s/ Chad A. Landmon
                                              Chad A. Landmon (ct20932)
                                              Email: cal@avhlaw.com
                                              Thomas K. Hedemann (ct27686)
                                              Email: tkh@avhlaw.com
                                              Axinn, Veltrop & Harkrider LLP
                                              90 State House Square
                                              Hartford, CT 06103-3702
                                              Telephone: (860) 275-8100
                                              Facsimile: (860) 275-8101

                                              *Attorneys for Defendant Custom
                                              LeatherCraft Manufacturing Co. Inc.*

33

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing Defendant Custom

LeatherCraft Manufacturing Co., Inc.'s Responsive Claim Construction

Memorandum has been served via the Court's ECF system this 13th day of

May, 2009, to:

Richard R. Michaud
Email: michaud@michaud-duffy.com
Raymond D. Thompson
Email: thompson@michaud-duffy.com
Michaud-Duffy Group
306 Industrial Park Rd., Suite 206
Middletown, CT 06457

Ian E. Bjorkman
Email: ian@ibjorkman.com
Law Office of Ian E. Bjorkman, LLC
383 Orange Street
New Haven, CT 06511

Steven M. Coyle
Email: scoyle@cantorcolburn.com
Cantor Colburn LLP
20 Church Street, 22nd Floor
Hartford, CT 06103

   /s/ Thomas K. Hedemann   
Thomas K. Hedemann(ct27686)
Email: tkh@avhlaw.com
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT 06103-3702
Telephone: (860) 275-8100
Facsimile: (860) 275-8101

*Attorneys for Defendant*
*Custom LeatherCraft*
*Manufacturing Co. Inc.*